UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANKIT ANKIT (A-Number: 246-758-760),<br><br>                Petitioner,<br><br>        v.<br><br>CHRISTOPHER CHESTNUT, *et al.*,<br><br>                Respondents. | Case No.  1:26-cv-3908-TLN-JDP<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Ankit Ankit, a citizen of India, was re-detained by ICE at a check-in on April 13, 2026.  Through counsel, he seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner entered the United States without permission on March 29, 2023, and was taken into custody by immigration authorities, who processed him and released him on his own recognizance.  ECF No. 8-1 at 1, 3.  On June 24, 2023, petitioner filed an application for asylum.  ECF No. 1-2 at 20.  Petitioner obtained an employment authorization document and began working full-time.  ECF No. 1 at 15.  On July 29, 2025, petitioner was arrested for counterfeiting at the DMV.  ECF No. 8-2 at 5.  There is no evidence that charges have been filed.  *See* ECF No.

1

8-2 at 5; ECF No. 12 at 2.

On April 13, 2026, petitioner appeared at the ICE offices in San Francisco as directed for a check-in. ECF No. 8-1. at 3. ICE agents re-detained him, and he has been held in custody ever since. *Id.* On June 15, 2026, the immigration court ordered petitioner removed; his appeal to the BIA is due by July 15, 2026. *See* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/ (last visited July 6, 2026).

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## Analysis

Petitioner claims that his re-detention without any individualized review violates the Due Process Clause. ECF No. 1 ¶¶ 79-83.[1] Respondents argue two grounds for petitioner's mandatory detention. First, they argue that petitioner may be mandatorily detained under 8 U.S.C. § 1225 as an applicant for admission, and that they raise this statutory provision to preserve the issue for appellate review. ECF No. 8 at 2-3. In asserting this statutory argument, respondents fail to acknowledge that this argument has been consistently rejected by courts in this District. *See, e.g.*, *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025). Second, respondents argue that petitioner is mandatorily detained under 8 U.S.C. § 1226(a) based on an

---

[1] Because I recommend that the petition be granted on this ground, I do not address petitioner's other claims for relief. *See* ECF No. 1 ¶¶ 74-78, 84-95.

2

arrest in 2025 that never resulted in charges. *Id.* at 3-4; *see also* ECF No. 8-2 at 5; ECF No. 12 at 2. However, section 1226(a) is not a mandatory detention provision. *See* 8 U.S.C. § 1226(a)(2) (providing for bond or parole). Throughout their response, respondents only address petitioner's due process arguments through the lens of their statutory positions.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with issues similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal.

3

2025).  "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)).  I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Respondents concede that they released petitioner into the United States on his own recognizance in March 2023.  ECF No. 3 at 3; ECF No. 8-1 at 3.  Petitioner filed his asylum application in June 2023.  ECF No. 1-2 at 12-20.  Petitioner obtained employment authorization and has worked full-time.  ECF No. 1 at 15.  Petitioner formed "enduring attachments of normal life" over the three years between his parole and re-detention.  *See Morrissey*, 408 U.S. at 482.

I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release.  *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest.  This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:
First, the private interest that will be affected by the official action;
second, the risk of an erroneous deprivation of such interest
through the procedures used, and the probable value, if any, of

4

> additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the three years between his release and re-detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner into the United States, respondents necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more

5

generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention under two different statutes indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondents have not provided any information about the additional burden they would bear as a result of being required to provide a bond hearing. *See* ECF No. 8.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release. ECF No. 1 at 21. Respondents assume that a bond hearing may be ordered and do not discuss release. *See* ECF No. 8.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the

necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id.* at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, there is no evidence, and respondents have presented no argument, suggesting that there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. Petitioner was arrested on July 29, 2025, at the DMV. ECF No. 8-2 at 5. No charges have been filed. *Id.*; ECF No. 12 at 2. For eight months following his arrest, petitioner was out of custody on his own recognizance, and ICE seemingly could have re-detained him at any time. Nonetheless, petitioner remained out of custody until April 13, 2026, when ICE re-detained him without notice or hearing during a scheduled check-in. ECF No. 8-1 at 3.

Although respondents argue that petitioner's criminal arrest places the public "at a danger of being defrauded," respondents provide no details of the facts underlying that arrest. *See* ECF No. 8 at 4. Moreover, that charges have not been filed and that respondents waited eight months to re-detain petitioner suggests that there was not an urgent need to act such that petitioner could not have been provided a pre-deprivation hearing. Additionally, there is no evidence, and respondents have presented no argument, suggesting that petitioner is a flight risk; on the contrary, he seemingly has complied with all conditions of release, including reporting to his appointment on April 13, 2026.

Under these circumstances, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him

7

to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

Accordingly, I recommend that petitioner be released.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The motion to dismiss, ECF No. 8, be DENIED.

2. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

3. Respondents be ordered to immediately release petitioner (A-Number: 246-758-760) from their custody on the same conditions as his prior release. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

4. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:     July 7, 2026     

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE